# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Chief Judge Marcia S. Krieger

Civil Action No. 14-cv-00488-MSK-CBS

**EUGENE M. GIBBS-SQUIRES;**
**BABARA A. GIBBS and all others similarly situated,**

      **Plaintiffs,**

**v.**

**URBAN SETTLEMENT SERVICES, d/b/a Urban Lending Solutions;**
**BANK OF AMERICA, N.A.;**
**NATIONSTAR MORTGAGE;**
**SPECIALIZED LOAN SERVICES;**
**THE KORN LAW FIRM, P.A.,**
**BENJAMIN D. MOORE, and**
**DOES 3-5,**

      **Defendants.**

---

## OPINION AND ORDER ADOPTING RECOMMENDATION AND GRANTING MOTIONS TO DISMISS

---

      **THIS MATTER** comes before the Court pursuant to the Plaintiffs' *pro se* Objections

(**#77**, as amended **# 78**) to the Magistrate Judge's November 18, 2014 Recommendation (**# 75**)

that certain motions to dismiss (**# 24, 40, 45**) be granted and that various motions by the

Plaintiffs (**# 6, 11, 16**) be denied,[1] responses by Defendant Bank of America N.A. and Nationstar

Mortgage (**# 79**) and Defendant Urban Settlement Services (**# 80**), and the Plaintiffs' reply (**# 1**).

## FACTS

      According to their initial *pro se* Complaint (**# 1**), in 2005, the Plaintiffs, Mr. Gibbs-

Squires and Ms. Gibbs, purchased a home in Florence, South Carolina. That purchase was

---

[1]       In addition, the Magistrate Judge exercised his authority under Fed. R. Civ. P. 72(a) to
directly deny certain additional motions (**# 37, 47, 61, 64**) by the Plaintiffs.

financed by a mortgage loan extended by Defendant Bank of America ("BOA"). In or about 2009, the Plaintiffs contacted BOA seeking a modification of that loan under the Home Affordable Modification Program ("HAMP"), recently created by Congress.[2] They contend that they were repeatedly given false information, incorrectly told they were not eligible for a modification, and were repeatedly transferred among BOA employees.

Eventually, in 2011, they were assigned to Rogelio Chua, a BOA employee to manage their application for a HAMP modification. Although the Plaintiffs contend that they provided all requested information, they were repeatedly told by Mr. Chua that their application was incomplete. They left many messages for Mr. Chua without a response, or were told that their application was still being processed. The Plaintiffs contend that many of these communications from BOA were intentionally false and intended by BOA to delay or obstruct the Plaintiffs' efforts to obtain a modification.

In June 2012, the Plaintiffs were informed that their application was denied due to their failure to submit requested documents. The Plaintiffs sought reconsideration of that determination, only to experience additional delays. In November 2012, before any determination had been made on the Plaintiffs' request for reconsideration, BOA informed the Plaintiffs that it had sold their mortgage to Defendant Nationstar Mortgage ("Nationstar") (and/or Defendant SLS, identified in the Complaint as "Specialized Loan Servicing").[3] They

---

[2]     HAMP is a federal program that gives mortgage lenders incentives to offer loan modifications to borrowers who have a mortgage payment-to-income ratio of over 31%, and is intended to encourage lenders to renegotiate qualifying loans to reduce the homeowner's mortgage payments to a sustainable level. *Thompson v. Bank of America, N.A.*, ___ F.3d ___, 2014 WL 6844931 (6th Cir. Dec. 5, 2014) (slip op.).

[3]     The Plaintiffs assert that BOA "shelled" their November 2011 mortgage payment, causing the loan to appear delinquent even though they "never . . . missed a payment on their mortgage."

contended that the Defendants "repeatedly used mail and wire to issue knowingly false communications to the Gibbs regarding their loan modification."

Based on these allegations, their initial Complaint alleged a single claim pursuant to the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c). They alleged that Defendants BOA; Nationstar, SLS; Urban Settlement Services, LLC ("Urban"); and various other entities and individuals[4] conspired for the purpose of "extend[ing] as few permanent HAMP modifications as possible." The Complaint alleges that the various members of the enterprise engaged in a pattern of racketeering acts consisting of mail and wire fraud by "sending instructions to Plaintiffs and other homeowners by mail, fax, [or] email . . . directing them to provide documents . . . even though Defendants did not intend to enable homeowners who fulfilled all requirements to obtain a permanent HAMP loan modification," among other communications. The initial Complaint also sought to certify the action on behalf of a class of plaintiffs, represented by the Plaintiffs, of other HAMP applicants denied by BOA.

Shortly thereafter, the Plaintiffs filed a *pro se* Amended Complaint (**# 8**). It purported to incorporate the entirety of the existing Complaint, and added additional parties (including Defendants Korn Law Firm, P.A., and Benjamin D. Moore, a Referee for the 12th Judicial Circuit Court in South Carolina who apparently presided over foreclosure proceedings on the Plaintiffs' home), allegations, and claims. In addition to the existing RICO claim, the newly-added claims are: (i) a claim under the Equal Credit Opportunity Act ("EQOA"), 15 U.S.C. § 1691e, in that all Defendants are "creditors" under that Act who failed to comply with regulations requiring them to make timely determinations and provide reasons for denials of credit; (iii) a claim under

---

[4]        The Plaintiffs persistently refer to this enterprise by the nickname "the HAMP-less Gang."

California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. § 1750 *et seq.*,[5] apparently

against all Defendants, in that the Defendants "practices" – namely, promising to provide the

Plaintiffs with information about their request for reconsideration – "constitute unfair business

practices under the CLRA"; (iii) violation of California's Unfair Competition Law ("UCL"), Cal.

Bus. & Prof. Code § 17200 *et seq.*, in that the Defendants actions "conduct is unfair under the

UCL" because "there is no benefit to society in allowing [the Defendants] to serially breach its

[agreements], mislead borrowers regarding their ability to obtain loan modifications, or foreclose

on borrowers [eligible for HAMP relief]"; (iv) breach of contract (under an unspecified

jurisdiction's common law), in that the Defendants entered into "an enforceable contract

requiring [them] to provide [the Plaintiffs] an offer to permanently modify their loans"; (iv) a

claim captioned as "breach of contract" but primarily complaining that Defendant The Korn Law

Firm commenced a foreclosure action against the Plaintiffs without cause and that the firm made

fraudulent representations to the court in pursuing that action, and that Defendants including Mr.

Moore conspired to advance that lawsuit; (v) breach of the implied covenant of good faith and

fair dealing (under an unspecified jurisdiction's common law) in that the Defendants abused their

discretion under agreements to permanently modify the Plaintiffs mortgage loan terms; (vi)

promissory estoppel (under an unspecified jurisdiction's common law), in that the Defendants

promised the Plaintiffs that "if their representations continued to be true and correct," a

modification of loan terms would follow, and that the Plaintiffs relied on that representation

instead of taking actions such as declaring bankruptcy or making an "efficient breach" of the

mortgage loan terms; (vii) fraudulent misrepresentation (under an unspecified jurisdiction's

common law), in that the Defendants' written modification agreements misrepresented to the

---

[5]     The connection between the actions alleged by the Plaintiffs and the State of California is
unclear.

Plaintiffs the Defendants' willingness to enter into a permanent modification of the loan terms; (viii) unjust enrichment/restitution (under an unspecified jurisdiction's common law), in that the Plaintiffs made "monthly payments that shouldn't have been made," conferring an unnecessary benefit on the Defendants; (ix) claims under "42 U.S.C. § 1981, 1982, 1983, 1985, 1986, and 1988" in that the Defendants' actions were undertaken to "target [African-Americans] as a specific group"; (x) a claim invoking various provisions of the RICO Act, similar to that alleged in the initial complaint, and further alleging "violation of the Hobbs Act, 28 U.S.C. § 1951 . . .," including "illegally foreclosing on homes" in various states as predicate racketeering acts.

Several of the Defendants filed motions to dismiss. Mr. Moore's *pro se* motion **(# 24)** sought dismissal for lack of personal jurisdiction, improper venue, insufficiency of process, and failure to state a claim under Fed. R. Civ. P. 12(b)(2), (3), (4), (5), and (6). BOA and Nationstar moved **(# 40)** to dismiss the claims due to lack of personal jurisdiction and failure to state a claim under Rule 12(b)(2) and (6).[6] Urban moved **(# 45)** to dismiss for failure to state a claim under Rule 129(b)(6). Separately, Mr. Gibbs-Squires filed a variety of *pro se* motions, seeking an injunction against further foreclosure proceedings,[7] sanctions against various Defendants, and leave to amend the Complaint, among other things.

The Court referred all of the motions to the Magistrate Judge for appropriate disposition. On November 18, 2014, the Magistrate Judge issued a combined Recommendation and ruling **(#75)** on the motions. Specifically, the Magistrate Judge found that: (i) as to the existence of personal jurisdiction over the non-Colorado Defendants (Mr. Moore, BOA, and Nationstar)

---

[6]    The motion also noted that no service of process had yet been effected on Nationstar.

[7]    An "amended" motion for temporary injunction by Mr. Gibbs-Squires' motion primarily discusses a separate conspiracy by non-parties to steal Mr. Gibbs-Squires' psychiatric medical records from the State of Connecticut and various other irrelevant matters.

under the ECOA and state-law claims, the Plaintiffs did not plead facts sufficient to show that the Defendants maintained sufficient minimum contacts with Colorado to permit the exercise of jurisdiction consistent with the Due Process clause; (ii) although the RICO Act permits nationwide service of process (and thus, personal jurisdiction), the Plaintiffs failed to adequately plead the essential elements of a RICO enterprise or a pattern of racketeering activity; (iii) the Amended Complaint failed to comply with Fed. R. Civ. P. 8's requirement of a "short and plain statement" of the pertinent facts and relief requested; (iv) the Plaintiffs' proposed Second Amended Complaint would not cure the jurisdictional and pleading defects, warranting denial of the request for leave to amend. Thus, the Magistrate Judge recommended that this Court grant the motions to dismiss and deny Mr. Gibbs-Squires' motions seeking a preliminary injunction, and the Magistrate Judge denied the motions over which he exercised authority under Fed. R. Civ. P. 72(a), including the Plaintiffs' motion to amend.

The Plaintiffs timely filed an Objection (# 77) to the Recommendation. Although the second half of that document digresses into irrelevant tangents about Bill Cosby and Mr. Gibbs-Squires' indictment in an unrelated matter, a generous reading of its first half indicates that the Plaintiffs contend that: (i) the Magistrate Judge erred in noting that the Plaintiffs had not served Nationstar or Mr. Moore; (ii) the Amended Complaint did not run afoul of Rule 8, and that the Plaintiffs' pleadings are "concise and plain"; (iii) Mr. Moore waived any Rule 12(b) defenses by filing an Answer; and (iv) the RICO claim is sufficient to permit the exercise of personal jurisdiction over all Defendants; and (v) the Amended Complaint alleges that "BOA has calls received at [its] office 'slingshot' to Bloomfield, Colorado [where Urban receives them]," thus subjecting BOA to personal jurisdiction in Colorado. Subsequently, the Plaintiffs filed "Amended Objections" (# 78), which mostly elaborate on the irrelevant tangents in the original

Objection.  At most, the Amended Objections raise a contention that the Magistrate Judge erred in finding that leave to amend should be denied.

**ANALYSIS**

**A.  Standard of review**

As to those matters that are dispositive of a claim or defense – that is, the Defendants' motions to dismiss and the Plaintiffs' motions seeking preliminary injunctive relief – the Court reviews the objected-to portions of the Recommendation *de novo*.  Fed. R. Civ. P. 72(b).  As to those matters that are properly referred to the Magistrate Judge for conclusive determination pursuant to 28 U.S.C. § 636(b)(1)(a) – most notably, the Plaintiffs' motion for leave to amend their pleadings[8] – the Court will set aside the Magistrate Judge's findings and conclusions only if the Court finds that they are "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996).  Accordingly, the Plaintiff's Objections will be overruled unless the Court finds that the Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made."  *Ariza,* 167 F.R.D. at 133, *citing Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

The Plaintiffs here proceed *pro se*.  As such, the Court liberally construes their pleadings.[9]  *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).  However, such liberal construction

---

[8]      *See e.g. Franke v. AUP Laboratories, Inc.*, 390 Fed.Appx. 822, 828 (10th Cir. 2010) (unpublished) ("Mr. Franke's motion to amend was a nondispositive pretrial matter that the magistrate judge was authorized to decide pursuant to 28 U.S.C. § 636(b)(1)(A)").

[9]      The pleadings repeatedly point out that Mr. Gibbs-Squires is an attorney (although the pleadings appear to assert that he was disbarred at some point in the past).   Normally, the Court does not extend the benefits of liberal construction of *pro se* pleadings to licensed (whether

is intended merely to overlook technical formatting errors and other defects in the Plaintiffs' use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the Plaintiffs of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiffs according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### B. Sufficiency of RICO claim

Although the Court would normally address the existence of its personal jurisdiction over the Defendants before turning to the sufficiency of the pleading of claims, here the peculiar operation of the RICO claims is critical in personal jurisdiction analysis. When a RICO claim is brought against at least one defendant over whom the Court has personal jurisdiction, the RICO Act permits any summons to be served "nationwide" over other defendants, essentially subjecting defendants who are foreign to the forum to personal jurisdiction if the "ends of justice" so require. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230-31 (10th Cir. 2006). Here, Urban is alleged to be a resident of the State of Colorado and a member of the alleged RICO enterprise. Thus, the Court must consider whether: (i) the Amended Complaint adequately pleads a RICO claim against Urban, and (ii) if so, whether the ends of justice require this Court to exercise personal jurisdiction over the remaining non-resident defendants.

To plead a civil RICO claim under 18 U.S.C. § 1964(c), a plaintiff must allege: (i) the each Defendant "conducted" or "participated in," (ii) the affairs of an "enterprise," (iii) through a

---

presently or formerly) attorneys who choose to represent themselves. *See e.g. Mann v. Boatright*, 477 F.3d 1140, 1148 n. 4 (10th Cir. 2007). Because the Court finds that the Plaintiffs' Amended Complaint is subject to dismissal even under a standard more favorable to Mr. Gibbs-Squires, the Court need not consider whether he is entitled to the benefits of *Haines*.

"pattern of racketeering activity." *Bixler v. Foster*, 596 F.3d 751, 760-61 (10th Cir. 2010). In addition, a civil RICO plaintiff must allege facts showing that he/she/it was "injured in his business or property by reason of" the acts of the enterprise. 18 U.S.C. § 1964(c); *see CGC Holding Co., LLC v. Broad & Cassel*, ___ F.3d ___, 2014 WL 6872148 (10th Cir. Dec. 8, 2014) (slip op.) ("the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well'"). The element of an "enterprise" refers to a "group of persons [or entities] associated together for a common purpose of engaging in a course of conduct." *Boyle v. U.S.*, 556 U.S. 938, 944 (2009). An enterprise's participants must share a common purpose or objective, and the enterprise must have some degree of continuity or longevity, sufficient to permit the members of the enterprise to pursue that purpose. *Id.* at 946. It is not, however, necessary to plead that the enterprise had a formal structure or clear chain of command or fixed membership. *Id.* at 948. The term "racketeering activity" has an expansive and sprawling definition, but it is sufficient here to observe that acts of criminal mail fraud under 18 U.S.C. § 1341 and acts of criminal wire fraud under 18 U.S.C. § 1343 can constitute "racketeering activity," as discussed below. 18 U.S.C. § 1961(1). A "pattern" of racketeering activity is pled by alleging at least two predicate acts that are related and demonstrate continuing unlawful conduct. *U.S. v. Kamahele*, 748 F.3d 984, 1002 (10th Cir. 2014).

When mail or wire fraud allegations constitute the predicate RICO acts, the plaintiff is required to allege facts demonstrating the criminal elements of such fraud, namely: (i) that the defendants devised a "scheme or artifice to defraud," and (ii) that the execution of that scheme entailed the use of postal mail or interstate wire communications. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). However, the plaintiff need not allege an element

common to civil fraud claims – the plaintiff's reliance upon the fraudulent representation; a party may be injured by a fraudulent scheme directed at a different person or entity. *Id.* at 649.

With these principles in mind, the Court turns to the Magistrate Judge's conclusion that the Plaintiffs failed to adequately allege a RICO claim against the Defendants. This Court agrees. Treating all allegations in the Complaint or Amended Complaint as true, the Plaintiffs have failed to allege a pattern of racketeering activity because the conduct they attribute to the Defendants does not, as a matter of law, constitute criminal mail or wire fraud under 18 U.S.C. § 1341 or § 1343. The essential component of unlawful mail or wire fraud is a "scheme to defraud" or a "scheme . . . for obtaining money or property by means of false or fraudulent pretenses." 18 U.S.C. § 1341, 1343. Ascertaining the existence of a "scheme to defraud" focuses on the end result – whether the perpetrator of the scheme has deceived a person of ordinary prudence out of money or property – and may or may not entail the use of affirmative misrepresentations. *See U.S. v. Cochran*, 109 F.3d 660, 664-65 (10th Cir. 1997), *citing U.S. v. Cronic*, 900 F.2d 1511, 1513-14 (10th Cir. 1990). A scheme to obtain money or property by use of false pretenses, on the other hand, requires a showing of affirmative misrepresentations that are employed to obtain the money or property. *Id.*

The scheme alleged by the Plaintiffs can be succinctly summarized: having received federal funds as part of a bank bailout, BOA was required by the U.S. Department of the Treasury to participate in HAMP. Such participation required BOA to examine its portfolio of mortgage loans and offer eligible borrowers a preliminary modification. Upon the borrower's successful completion of payments (as modified) over a certain period of time, the modification would be made permanent. The Complaint alleges that BOA did not wish to offer HAMP modifications, finding them to be unprofitable or administratively complex. Thus, the Plaintiffs

10

allege, BOA and its affiliates attempted to obstruct and delay borrowers' attempts to request modifications and demonstrate eligibility. For example, BOA and its affiliates would purposefully mishandle applications and supporting documentation or, through inactivity, allow applications to become "stale" and require borrowers to re-apply and re-submit documentation. For purposes of this analysis, the Court will assume the truth of the Plaintiffs' allegations that BOA would falsely represent (by wire or mail) to borrowers that their applications were being processed or evaluated when they were not.

Even taken in the light most favorable to the Plaintiffs, these allegations fail to demonstrate a scheme by BOA and its affiliates to defraud anyone – that is, to wrongfully obtain property belonging to another – or to obtain money or property by means of false pretenses. Notably, the scheme described by the Plaintiffs does not involve BOA or its affiliates taking any affirmative act to obtain money or property from others; rather, the alleged scheme involves BOA passively and obstinately refusing to take any action to alter the status quo. Arguably, one might say that, by obstructing borrowers' efforts to obtain modifications, BOA deprived those borrowers of the modification itself, but that merely leads to the question of whether a borrower's right to a modification constitutes a protected "property" interest.

The courts that have considered whether HAMP creates a property right to a modification have concluded that it does not. *See Edwards v. Aurora Loan Services, LLC*, 791 F.Supp.2d 144, 154 (D.D.C. 2011) ("a number of federal courts have considered virtually identical due process claims and rejected them, holding that the significant discretion built into HAMP precludes any finding of a protected property interest") *and cases cited therein*. At best, then, the Plaintiffs have pled facts showing that BOA offers poor customer service and did not comply with the terms of HAMP. But without allegations that BOA's actions **deprived someone of money or**

**property,** the Plaintiffs have failed to assert colorable contentions of mail or wire fraud, and thus, failed to assert a pattern of racketeering activity.

As a second matter, the Plaintiffs' pleadings never affirmatively assert that the Plaintiffs are eligible for HAMP benefits. The only concrete assertions in the pleadings about the Plaintiffs' financial condition indicate that in or about 2005, the Plaintiffs experienced a fairly small diminishment of their income,[10] but they continued paying their mortgage for six more years without incident. They repeatedly assert that they requested a HAMP modification in 2011, but conspicuously, they do not allege facts that show that they meet the program's eligibility criteria (much less demonstrate what, if any, modification they would have been entitled to had their application been processed promptly and correctly). Without allegations sufficient to show that the conduct of the alleged RICO enterprise caused the Plaintiffs to suffer some injury, their claim under 18 U.S.C. § 1964(c) fails for a second reason.

Accordingly, this Court agrees with the Magistrate Judge that the Plaintiffs' RICO claim fails to state a claim under Rule 12(b)(6). That claim is dismissed as against all parties.

### C. Personal jurisdiction

The failure of the Plaintiffs' RICO claim deprives them of the primary tool by which they sought to have the Court assert personal jurisdiction over the non-Colorado Defendants (every Defendant except Urban). The Plaintiffs do not offer, in their pleadings or Objections, any alternative theory that would permit the Court to exercise personal jurisdiction over Mr. Moore

---

[10]     According to Paragraph 110, as of the beginning of 2005, Ms. Gibbs earned approximately $105,000 annually from employment, and Mr. Gibbs earned $24,000 per year, for a total of $ 129,000. In June 2005, Ms. Gibbs retired, cutting her income to $ 60,000 per year. A few months later, Mr. Gibbs began receiving additional disability payments that brought his income to $ 60,000 per year. Thus, by the end of 2005, the Plaintiffs' joint income was $ 120,000 per year, a reduction of only $9,000 per year (or approximately 7% of their income). In 2009, Mr. Gibbs' benefits were penalized $1,500 per year for two years, but this does not materially alter their financial position.

(whose actions in this case were exclusively confined to South Carolina), or entities like the

Korn Law Firm or Nationstar, non-Colorado residents whose foreclosure-related actions here

were directed only at the Plaintiffs in South Carolina, and, in any event, the Court finds that the

Magistrate Judge's explanation as to the Court's lack of personal jurisdiction over these

Defendants is sound.

The Court is not so sanguine that it lacks personal jurisdiction over BOA, however. The

Amended Complaint expressly asserts that BOA retained Urban to perform mortgage-processing

services on BOA's behalf and that Urban is a corporation with its principal place of business in

Broomfield, Colorado. The Complaint alleges various ways in which BOA directed Urban's

actions, such as BOA "assign[ing] Urban . . . to analyze the data in a 'pool' of loans to determine

the preferred modification program" and placing "intense pressure . . . on Urban . . . to close files

as fast as possible." *Docket* # 1,¶ 56, 62. Arguably, the Complaint itself states facts sufficient to

show that BOA entered into an agreement with a Colorado resident for that resident to perform

significant services, in Colorado, on BOA's behalf. It also reflects that BOA had significant

communications with Urban in Colorado in furtherance of Urban performing those services. This

is sufficient to subject BOA to personal jurisdiction in Colorado. *See e.g. Foundation for*

*Knowledge in Development v. Interactive Design Consultants, LLC*, 234 P.3d 673, 679-80 (Colo.

2010). Thus, the Court declines to adopt that portion of the Recommendation that proposes

dismissal of the claims against BOA on personal jurisdiction grounds.

### D. Sufficiency of remaining claims

The Magistrate Judge chose to dispose of the remaining claims against Urban by

dismissing those claims due to the Plaintiffs' failure to comply with Rule 8's "short and plain

statement" requirement. This Court is not necessarily persuaded that the Complaint and

Amended Complaint, in combination, are so far afoul of that Rule's requirements that dismissal without consideration of the merits is appropriate. Instead, the Court will turn to Urban and BOA's arguments that the remaining claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-50. The Court takes the remaining, well-pled factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* at 1950-51. What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are

"so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

   a.  ECOA claim

The Equal Credit Opportunity Act generally prohibits a creditor from discriminating against applicants for credit on the grounds of race, sex, and marital status, among other protected classifications.  15 U.S.C. § 1691(a).  To assist credit applicants in ensuring that credit determinations are not made on the basis of prohibited classifications, the Act requires that "within thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application," including providing a statement of reasons for any adverse action taken.  15 U.S.C. § 1691(d).  An applicant aggrieved by a creditor's violation of the Act may bring an action for actual damages.  15 U.S.C. § 1691(e).

To state a claim under the ECOA, a plaintiff must allege the following elements: (i) he or she is a member of a class protected by the Act; (ii) he or she applied for credit; (iii) he or she was qualified for credit; and (iv) he or she suffered an adverse action, as defined by the statute, in conjunction with that application.  *Harvey v. Bank of America, N.A.*, 906 F.Supp.2d 982, 991 (N.D. Ca. 2012).  The Court will assume (without necessarily finding[11]) that requests for HAMP modifications of mortgage loans constitute a form of applying for "renew[ed]" or "continu[ed]" credit from BOA.

_____

[11]     Some courts have questioned whether applications for modification of existing mortgages under HAMP constitute applications for "credit" under the ECOA at all.  *See e.g. Thompson v. Bank of America, N.A.*, ___ F.3d ___, 2014 WL 6844931 (6th Cir. Dec. 5, 2014) (slip op.) ("Thompson's complaint—that BOA has refused to modify her repayment terms under HAMP— does not fall within the definition of 'adverse action.' She fails to state a claim under the ECOA").  Neither BOA nor Urban has raised this argument, and thus, the Court does not consider the issue at this time.

BOA argues that the Plaintiffs cannot state a claim under the ECOA because: (i) the obligation to timely process an application arises only once the application is complete, and the Complaint notes that the Plaintiffs' application was denied due to incompleteness; and (ii) even if the application was complete, the denial of their application does not constitute an "adverse action" under the Act because the Plaintiffs were already in default on that obligation.

As to the first point, a creditor's obligations under the ECOA are triggered only upon a putative borrower's submission of a completed application for credit. *See Newton v. United Companies Financial Corp.*, 24 F.Supp.2d 444, 460 (E.D. Pa. 1998). A "completed" application is one in which "the creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested." *Id.* BOA points out that the Plaintiffs admit that their initial application for a modification was denied on June 20, 2012 "for failure to submit the required documents." However, the Complaint alleges that they submitted "the completed application along with all the documents requested," and that thereafter, they "fully complied with each demand that they send in documents and promptly sent the documents BOA requested." *Docket # 1, ¶ 116, 123.* Although development of the factual record may ultimately reveal that BOA has more extensive application requirements than the Plaintiffs may have realized, at this early stage of the litigation, the Court must take this allegation as true. Thus, the Plaintiffs have sufficiently alleged that they provided BOA with a complete application.

As to the second point, BOA is correct that 15 U.S.C. § 1691(d)(6) provides that "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default" does not constitute an "adverse action" triggering ECOA obligations. BOA goes on to point out that the Complaint alleges that their mortgage loan is

considered by Nationstar to be "in arrears." *Docket # 1*, ¶ 129. However, the Complaint alleges that the Plaintiffs "never . . . missed a payment on their mortgage," and that the alleged delinquency is a result of BOA having "shelled" the Plaintiffs' November 2011 mortgage payment. *Id.* (The Plaintiffs do not offer any particular insight into the meaning they ascribe to the term "shelled." The Court will assume from context that the Plaintiffs are alleging that BOA never properly credited their November 2011 payment to their account, thus leaving the loan in a state of delinquency.)

Ordinarily, the Court would take the Plaintiffs' assertion as true and find that the Plaintiffs have adequately alleged that they were current on their mortgage obligations as of mid-2012, thus allowing their ECOA claim to proceed. However, the Court cannot overlook a subsequent filing by the Plaintiffs in this action. In August 2014, the Plaintiffs moved **(# 64)** for leave to file a Second Amended Complaint. Attached to that motion was their proposed amended pleading which reads, in part, "In or about November 2009 after being totally frustrated with BOA, Mr. Gibbs returned to South Carolina; **we stopped paying the mortgage and have not paid the mortgage in five (5) years."** *Docket #* 64-1, ¶ 8 (emphasis added). This is flatly contradictory to the Plaintiffs' representation in their original Complaint that they have made all of their mortgage payments through November 2012 (and suggests that sanctions against the Plaintiffs under Fed. R. Civ. P. 11(b)(3) might be warranted). Both documents are signed by both Plaintiffs, rendering them internally inconsistent.[12] In such circumstances, this Court is not

---

[12]     Arguably, there is a possible reading of the combined pleadings that might explain away the apparent inconsistency. The proposed Second Amended Complaint alleges that, after purchasing their home in South Carolina, Mr. Gibbs-Squires went to Maryland for health purposes. At that point in time (apparently in or about May 2009), "Gaithersburg, MD would be Mr. Gibbs' primary residence and [South Carolina] would remain Ms. Gibbs' primary residence." *Docket #* 64-1, ¶ 7. The next paragraph in the proposed Second Amended Complaint is that quoted above, in which "Mr. Gibbs returned to South Carolina" and the

required to treat as true the allegations favorable to the Plaintiffs' claims and ignore an internal inconsistency in their tendered pleadings. *See Anthony Sterling, M.D. v. Provident Life and Acc. Ins. Co.*, 519 F.Supp.2d 1195, 1208 (M.D.Fl. 2007). Based on the Plaintiffs' assertion that they stopped paying their mortgage in or about 2009, before they applied for the HAMP modification in 2011, BOA is correct that the Plaintiffs were therefore in default on the loan at the time, and thus, BOA's decision to deny the request for a modification does not amount to an "adverse action" under the ECOA, requiring dismissal of the Plaintiffs' ECOA claims.[13]

     b. 42 U.S.C. § 1981, 1983, etc.

The Court need not belabor the analysis of these claims. The Plaintiffs have failed to state a claim under any of the cited statutes, either because they failed to adequately allege that

---

Plaintiffs "stopped paying the mortgage." It may be that this sentence is asserting that the Plaintiffs ceased paying the mortgage on the home in Maryland, but have remained current on their mortgage payments on the home in South Carolina. (Such a conclusion would be bolstered by the Plaintiffs' contention that BOA has not attempted to foreclose on them because "their actions would not be tolerated in Montgomery County Circuit Court, Maryland.")

Even if this is the correct reading of the Second Amended Complaint, it is clear that both of the Plaintiffs' mortgages were with BOA. *Docket* # 64-1, ¶ 6 ("Ms. Gibbs applied to [BOA] to have both her home mortgages modified"). Thus, although the Plaintiffs' mortgage loan on the South Carolina house allegedly remained current, the Plaintiffs were admittedly in default on their Maryland mortgage with BOA. The parties have not grappled with the question of whether 15 U.S.C. § 1691(d)(6) denies the ECOA's protections to delinquent borrowers on an account-by-account basis – that is, the ECOA would protect the Plaintiffs' attempt to modify the current South Carolina mortgage but would not apply to attempts to modify the delinquent Maryland mortgage – or whether that provision acts to deprive a borrower delinquent on one loan from ECOA protection on any modification it seeks from that creditor. Given that the statutory language addresses "an applicant who is delinquent or otherwise in default," not "an account," this Court would be inclined to hold that the Plaintiffs' admitted delinquency on the Maryland mortgage deprived them of the protections of the ECOA as it related to their application to modify the South Carolina mortgage with BOA.

[13]    The Court need not reach the question of whether an ECOA claim would lie as to Urban. At best, the Plaintiffs allege that Urban was a "creditor" as defined by the Act only to the extent it assisted BOA in deciding whether to modify the Plaintiffs' existing credit terms. 15 U.S.C. § 1691a(e). Thus, the ECOA claim against Urban rises or falls in concert with the ECOA claim against BOA.

the Defendants are "state actors" (as is required under 42 U.S.C. § 1983), or because they failed to offer any plausible facts to suggest that the Defendants' actions were motivated by their race (as required for a claim under 42 U.S.C. § 1981). Indeed, as to the latter point, the crux of the Plaintiffs' Complaint is the Defendants acted on a systemic basis against as many borrowers as possible, solely out of an economic motive, not as the result of any specific racial bias. Accordingly, all claims arising under these statutes are dismissed.

      c. California law claims

The Court also summarily dismisses all claims brought by the South Carolina Plaintiffs under California statutory law against the Defendants for acts that occurred in either South Carolina or in Colorado. The Defendants correctly note that the California statutes apply only to conduct occurring in California, and the Plaintiffs have not alleged any facts tying the actions at issue here to that jurisdiction.

      d. Common-law claims

Finally, the Court finds that none of the Plaintiffs' common-law claims adequately allege a colorable cause of action. In the absence of any identification by the Plaintiffs of the law controlling these claims, the Court applies Colorado's common-law.

As to the claims for breach of contract[14] and breach of the implied covenant of good faith and fair dealing, the Plaintiffs' claims fail because they have failed to allege the existence of any contract between themselves and BOA concerning a modification, an essential element of both claims. *See e.g. Newflower Market, Inc. v. Cook*, 229 P.3d 1058, 1064 (Colo.App. 2010)

---

[14]     The Court summarily dismisses the Plaintiffs' "breach of contract" claim against Defendant The Korn Law Firm, for failure to state a claim, insufficiency of service of process, and for lack of personal jurisdiction. There is no indication that the Firm's commencement of a foreclosure proceeding against the Plaintiffs in South Carolina has any connection whatsoever to Colorado.

(violation of the duty of good faith and fair dealing gives rise to a claim sounding in breach of contract). Their recitation of the breach of contract claim in the Amended Complaint speaks of a "TPP Agreement," which the Court understands to be a "Trial Period Payment" agreement (that is, an agreement to abide by the terms of a temporary, trial modification of the mortgage), and a "PMA," which the Court understands to be a "permanent modification agreement," which the parties enter into after the mortgagor successfully completes the trial period. However, nothing in the pleadings warrants a conclusion that the Plaintiffs were ever offered a TPP by BOA, much less a PMA.

The Complaint makes clear that the Plaintiffs' request for a modification was initially rejected by BOA on June 20, 2012, *Docket # 1*, ¶ 122, and that their request for reconsideration of that decision was terminated without action when BOA sold the Plaintiffs' mortgage loan to Nationstar, *Docket # 1*, ¶ 129.[15] To the extent the Plaintiffs are claiming to be third-party beneficiaries of a contract between BOA and the U.S. Treasury Department (by which BOA received bailout funds in exchange for agreeing to participate in HAMP), courts have uniformly rejected the notion that agreements between banks and the Treasury Department create any third-party interests in individual borrowers. *See e.g. MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 491-92 (1st Cir. 2013).

As to the promissory estoppel claim, the Plaintiffs must allege that: (i) BOA made them a promise; (ii) that BOA should have reasonably expected would induce the Plaintiffs to act in reliance upon; (iii) the Plaintiffs did so rely; and (iv) that injustice can only be avoided by

---

[15] The Amended Complaint speaks of "Plaintiffs and Class Members who made three trial payments and had a signed PMA" as meeting the definition of "applicants" under the ECOA. *Docket # 8*, ¶ 20. The Court understands this to be in the disjunctive, with "Plaintiffs" and "Class Members who [made trial payments or had a signed PMA]" to be referring to two separate things, not asserting that the Plaintiffs themselves made trial payments and obtained a permanent modification agreement.

holding BOA to its promise. *Hoff v. Industrial Claim Appeals Office,* ___ P.3d ___, 2014 WL 5034507 (Colo.App. Oct. 9, 2014) (slip op.). The Plaintiffs have failed to adequately allege that BOA made any promise to them about a modification. The Plaintiffs assert that, "in written PMAs," BOA promised them that "if their representations continued to be true and correct," their mortgage would be modified. However, as discussed previously, the Plaintiffs have not alleged that they entered into any PMA with BOA concerning their mortgage, or that BOA ever even offered them a trial period modification. In such circumstances, the Plaintiffs have failed to sufficiently identify any promise that was actually made to them by BOA. (Moreover, the Court has some doubt that the Plaintiffs' alleged reliance – continuing to make the payments required under their existing mortgage loan – constitutes an act of reliance sufficient to support a claim for promissory estoppel.)

The Plaintiffs also assert a claim for "unjust enrichment" that, for all practical purposes, appears to duplicate the promissory estoppel claim. The Court finds that the Plaintiffs' pleadings fail to allege a cognizable claim of unjust enrichment.

Finally, the Plaintiffs allege a claim for fraudulent misrepresentation. Once again, the alleged "misrepresentations" are found in "written PMAs" that BOA offered to persons obtaining modifications. Because the Plaintiffs have not alleged that BOA ever offered them any modification, they have failed to allege that BOA made any fraudulent representation as to them.

Accordingly, the Court dismisses all of the Plaintiffs' common-law claims for failure to state a claim.

**E. Plaintiffs' motions**

The Court need not devote significant analysis to the array of motions filed by the Plaintiffs. All of the Plaintiffs' claims have been dismissed, essentially rendering all of the

Plaintiffs' motions moot. (Nevertheless, the Court has considered each motion and finds them to be without substantive merit. The Court thus affirms all rulings by the Magistrate Judge denying those motions.)

The Court pauses only to briefly address the Plaintiffs' Motion for Leave to Amend the Complaint (**# 64**). Arguably, the dismissal of the existing claims would not render this motion moot if it was sufficient to plead or re-plead a viable claim. However, the Magistrate Judge found that the proposed amendment was futile, as the proposed Second Amended Complaint failed to cure any of the defects in the prior pleadings. This Court agrees, albeit in part.

The proposed Second Amended Complaint is a relatively short document, running less than five full pages. Like the Amended Complaint, however, this is merely because the Plaintiffs have again sought to incorporate by reference their two prior pleadings, a practice prohibited by this Court's local rules. D.C. Colo. L. Civ. R. 15.1(b) ("the proposed amended pleading shall not incorporate by reference any part of the preceding pleading"). This alone would be grounds to deny the requested leave. This Court also notes that the proposed amendment does little more than purport to add an additional claim (one inexplicably asserted under 42 U.S.C. § 1962, a statute that relates to water resources planning[16]) and restate, without curing or clarifying, aspects of the Plaintiffs' RICO claim. The Court sees no reason to grant leave to the Plaintiffs to assert a plainly-mislabeled and repetitive statutory claim.

However, solely in the interests of completeness of the pleadings, the Court finds it appropriate to deem the Plaintiffs' pleadings to be amended to include that portion of the proposed Second Amended Complaint under the RICO heading. This ensures that any

---

[16]     The body of this proposed new claim simply repeats the Plaintiffs' contention that they are entitled to an injunction halting the foreclosure proceedings against them.

admission by the Plaintiffs regarding their default on a mortgage with BOA is properly included in the pleadings themselves. However, for the reasons discussed herein, that amendment fails to rescue the RICO claim or any of the Plaintiffs' other claims.

## CONCLUSION

Accordingly, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** the Plaintiffs' Objections (**# 77**, as amended **# 78**) to the November 18, 2014 Recommendation (**# 75**), as set forth herein. The Court **ADOPTS** the Recommendation, albeit on different grounds and **GRANTS** the Defendants' motions to dismiss (**# 24, 40, 45**). All claims asserted in this case are **DISMISSED**. The Court **DENIES** the Plaintiffs' motions for injunctive relief (**# 6, 11**) and for a default judgment (**# 16**). The Court **AFFIRMS IN PART** and **REVERSES IN PART** the Magistrate Judge's November 18, 2014 Order denying the Plaintiffs' Motion For Leave to Amend (**# 64**) and **GRANTS IN PART** that motion as set forth herein. The Court **AFFIRMS** the Magistrate Judge's denial of the remaining motions by the Plaintiffs (**# 37, 47, 61**). The Clerk of the Court shall close this case.

Dated this 14th day of January, 2015.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge